Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson*
jedelson@edelson.com
Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin S. Thomassen*
bthomassen@edelson.com
Amir Missaghi*
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Attorneys for Plaintiff and the Putative Class

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSHUA SMITH, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff,*<br><br>    *v.*<br><br>PEGATRON USA, INC., a California corporation, ASROCK AMERICA, INC., a California corporation, and FATALITY, INC., d/b/a Fatal1ty, Inc., a Missouri corporation,<br><br>    *Defendants.* | Case No. 14-CV-1822<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violations of Cal. Civ. Code §§ 1750** *et seq.*<br>2. **Violations of Cal. Bus. & Prof. Code §§ 17200,** *et seq.*;<br>3. **Violations of Cal. Bus. & Prof. Code §§ 17500,** *et seq.*;<br>4. **Fraudulent Inducement; and**<br>5. **Breach of Contract.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Joshua Smith ("Plaintiff" or "Smith") brings this class action complaint ("Complaint") against Defendants Pegatron USA, Inc., ASRock America, Inc., and Fatality, Inc., d/b/a Fatal1ty, Inc., (collectively, "Defendants") based on the deceptive marketing of their motherboards. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      ASRock[1] is a leading manufacturer of motherboards.[2] In 2010, ASRock partnered with Fatal1ty, Inc.—a company that creates specialized hardware for computer gaming enthusiasts—to develop the "ASRock Fatal1ty" line of motherboards.

2.      According to Defendants' marketing materials, the ASRock Fatal1ty motherboards utilize hardware components that enhance a user's computer gaming experience. For example, Defendants' claims that the motherboards' Killer E2200 Series LAN ("Killer LAN") network adapter "Boosts Networking Performance 5X" and is capable of reducing latency—a measurement of Internet responsiveness—by 136%. The motherboards also have gold-coated pieces of hardware called the 15μ Gold Finger ("Gold Finger"), which Defendants say will "triple the performance" of the computer's graphics.

3.      While these claims sound enticing to gamers, the unfortunate reality is that they are demonstrably false. As explained herein, Defendants mislead consumers into purchasing ASRock Fatal1ty motherboards by fabricating facts about the motherboards' technical specifications that are designed to appeal to gamers, *e.g.*, by representing that the hardware will increase network speeds and improve graphics quality (two highly sought after features for gamers).

---

[1]      ASRock America is a subsidiary of non-parties ASRock Incorporated and Pegatron Corporation, both Taiwanese corporations, which operate in the United States through

[2]      The American Heritage Science Dictionary defines a motherboard as "the main circuit board of a computer, usually containing the central processing unit and main system memory as well as circuitry that control the disk drives, keyboard, monitor, and other peripheral devices." Dictionary.com, http://dictionary.reference.com/browse/motherboard (last visited Apr. 14, 2014.)

4. Accordingly, this putative class action lawsuit seeks (i) to prevent Defendants from continuing to misrepresent the performance capabilities of their ASRock Fatal1ty motherboards, and (ii) damages for those deceived into purchasing the product under false pretenses.

## PARTIES

5. Plaintiff Joshua Smith is a natural person and citizen of the State of New Hampshire.

6. Defendant Pegatron USA, Inc. is a corporation incorporated in and existing under the laws of the State of California with its principal place of business located at 800 Corporate Way, Fremont, California 94539. Pegatron USA is a subsidiary of non-party Pegatron Corporation carrying on its operations and business in the United States. Pegatron USA does business throughout the United States and the State of California, including in this District.

7. Defendant ASRock America, Inc., is a corporation incorporated in and existing under the laws of California with its principal place of business located at 13848 Magnolia Ave, Chino, California 91710. ASRock America, Inc. is a subsidiary of non-party Pegatron Corporation. ASRock America, Inc., does business throughout the United States and the State of California, including in this District.

8. Defendant Fatality, Inc., d/b/a Fatal1ty, Inc., is a corporation incorporated in and existing under the laws of Missouri with its principal place of business located at 4575 Dean Martin Dr., Unit 1903, Las Vegas, Nevada 89103. Fatal1ty does business throughout the United States and the State of California, including in this District.

## JURISDICTION AND VENUE

9. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

10. This Court has personal jurisdiction over Defendants because Defendants

1  conduct business in California and because the events giving rise to this lawsuit occurred, in

2  substantial part, in California.

3      11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant

4  Pegatron resides in this District and all three Defendants conduct significant business here.

5  Venue is additionally proper because Defendant Pegatron maintains its headquarters and

6  principal place of business in this District.

7                              **INTRADISTRICT ASSIGNMENT**

8      12.    Pursuant to Civil Local Rule 3-2(d), this case should be assigned to the San

9  Francisco or Oakland Divisions.

10                             **FACTUAL BACKGROUND**

11  **I.    A Brief Overview of ASRock, Fatal1ty, and Their Gaming Motherboards.**

12     13.    Founded in 2002, ASRock has quickly become a dominant business in the

13  motherboard manufacturing industry, with offices throughout Asia, Europe, and the United

14  States. On its website, ASRock states that it is the "world[s] third largest motherboard brand"

15  and that it "explores the limit of motherboards manufacturing." In 2010, Pegatron acquired

16  ASRock.

17     14.    Defendant Fatal1ty is a company that primarily develops hardware for

18  gamers. Fatal1ty's website says that its gaming gear is "the product of choice for dedicated

19  video gamers looking for the most out of their equipment in order to enjoy the maximum

20  gaming experience." The company is widely known in the gaming community because its

21  founder, who goes by the online handle 'Fatal1ty,' is an international computer gaming

22  champion.

23     15.    Around December 2010, ASRock and Fatal1ty entered into a "global

24  partnership to develop a range of motherboards specifically designed for PC gaming

25  enthusiasts."[3] Soon after the announcement, Defendants released their line of motherboards

26  under the "ASRock Fatal1ty" name.

27  _____

[3]     *Fatal1ty and ASRock Reveal Partnership to Build Motherboards*,
28  https://www.facebook.com/notes/asrock/fatal1ty-and-asrock-reveal-partnership-to-build-
motherboards/182666315080517 (last visited Apr. 4, 2014.)

## II.     ASRock Fatal1ty Motherboards Cannot Perform As Advertised.

16.     As introduced above, Defendants make specific representations about the improvements in network speed and graphics performance that result from using their ASRock Fatal1ty motherboards. Further technical examination of these claims, however, reveals that Defendants' descriptions cannot be true.

> 1.     *The ASRock Fatal1ty motherboards' Killer LAN feature cannot improve network speeds by 5X or reduce latency by 136%.*

17.     On their websites and on the ASRock Fatal1ty motherboards' physical packaging, Defendants claim that the hardware's "Killer LAN" feature improves network performance by "5X" (*i.e.*, five times). (See <u>Figures 1 and 2</u>.)



(**Figure 1**, showing the ASRock Fatal1ty packaging that claims "5X Networking Performance.")



(**Figure 2**, showing Defendants' online representations.)

18.     The Killer LAN feature referred to by Defendants is actually a network controller designed by non-party Qualcomm Atheros Inc. ("Qualcomm"). Qualcomm sells the component, called the Killer E2200 Intelligent Networking Platform ("E2200"), to manufacturers that embed the network controller into their motherboards.

19.     Qualcomm's website describes the E2200 as a "gigabit Ethernet controller."[4]

---

[4]     *Qualcomm News and Events*, http://www.qualcomm.com/media/releases/2012/04/23/qualcomm-atheros-launches-killer-wireless-n-1202-wi-fi-module-and-killer (last visited Apr. 17, 2014.)

According to standards established by the Institute of Electrical and Electronics Engineers ("IEEE"), this means that the E2200's throughput[5] cannot exceed one "gigabit" per second.[6] With this technological constraint in mind, it becomes evident why Defendants' claim that Killer LAN increases networking performance by 5X is so misleading.

20.     As Qualcomm and the IEEE specify, the maximum throughput for the Killer LAN is precisely one gigabit per second. For Defendants' claim that the network controller increases performance "5X" to be true, the E2200 would need to capable of speeds of 5 gigabits per second. But the E2200 is not capable of such speeds, and Defendants did not modify the component in a way to be capable of such speeds.

21.     It makes sense then that Qualcomm and other manufacturers that use the E2200 component don't make similar claims about the product. For instance, Qualcomm's website says the following about the E2200: It provides "the lowest latency for game data on the most controllable network hardware available."[7] Yet nowhere does Qualcomm state that E2200 quintuples network performance.

22.     Additionally, another motherboard manufacturer that directly competes with Defendants, non-party Gigabyte Technology Co., LTD, sells motherboards embedded with the E2200. And when Gigabyte markets the feature, it merely states that the E2200 provides "better online gaming and online media performance compared to standard solutions."[8]

23.     It's a similar story for Defendants' assertion that Killer LAN reduces latency

[5]     "Throughput" is a technical measurement the amount of network traffic that can pass through a connection.

[6]     *IEEE-SA -IEEE Get 802 Program - 802.3: Ethernet*, http://standards.ieee.org/ about/get/802/802.3.html (last visited Apr. 17, 2014.)

[7]     *TechnologyEmbedded Ethernet | Qualcomm Atheros, Inc.*, https://www.qca.qualcomm.com/ products/killer-technology/solutions/embedded-ethernet/https://www.qca.qualcomm.com/products/ killer-technology/technology/ (last visited Apr. 17, 2014.)

[8]     *GIGABYTE - Motherboard - Socket 1150 - G1.Sniper 5 (rev. 1.x),* www.gigabyte.us /products/product-page.aspx?pid=4487#ov (last visited Apr. 15, 2014.)

by 136%. (*See* Figures 3 and 4, showing the same claims on the ASRock Fatal1ty

motherboards' packaging and Defendants' website, respectively). Latency is a measure of

how long an electronic communication takes to travel from a sender to recipient over the

Internet.[9] The maximum rate that an electronic communication may travel is limited by the

speed of light. And when communications travel through different mediums (*e.g.*, fiber optics

or copper), the maximum speed at which they may travel is reduced.



(**Figure 3**.)                    (**Figure 4**.)

24.     Despite these hard-truths, Defendants represent that the ASRock Fatal1ty

motherboards can reduce latency by "136%." Yet a simple analysis disproves this claim. A

"136%" reduction of a measured latency of 100 milliseconds would results in latency of

*negative* 36 milliseconds. This result shows that a decrease in latency by more than 100%

requires that the communications arrive at the destination *before* they have been sent (*i.e.*, the

communications travel faster than light.) Presently, this is impossible.

25.     Under Defendants' rationale, the ASRock Fatal1ty motherboards' networking

performance is greater than the sum of its parts. But if Defendants' claims were true, they

would defy the laws of physics, controvert the stated capabilities of the ASRock Fatal1ty's

networking controller, and run counter to the representations made by the controller's

manufacturer and Defendants' competitors.

---

[9]     Cheshire, Stuart, *Latency and the Quest for Interactivity, White paper commissioned by Volpe Welty Asset Management, LLC, for the Synchronous Person-to-Person Interactive Computing Environments Meeting*, 1996, available at http://www.stuartcheshire.org/papers/LatencyQuest.pdf.

2.     *The Gold Finger connector slot in the ASRock Fatal1ty motherboards cannot triple a graphics card's performance.*

26.     Defendants also represent that the Gold Finger PCIe connector slot in the ASRock Fatal1ty motherboards "triples" a graphics card's performance.[10] (*See* <u>Figures 5 and 6</u>, stating that "15μ gold components within the VGA PCIe slot" delivers "triple performance than usual.") But a look at the components used to construct the ASRock Fatal1ty motherboards shows that this claim also cannot be true.



(**Figure 5**, showing the ASRock Fatal1ty packaging that claims the Gold Finger provides "triple performance.")



(**Figure 6**, showing the ASRock Fatal1ty online claims that the Gold Finger provides "triple performance.")

27.     Defendants manufacture different versions of the ASRock Fatal1ty motherboards that are compatible with both Intel and AMD central processing units ("CPUs").[11] This compatibility is made possible by licensing chipsets[12] from Intel and AMD that are then used in the ASRock Fatal1ty motherboards. These chipsets control much of the

---

[10]     On information and belief, Defendants' representation that they used "15μ gold components" merely means that they applied a 15–micron (*i.e.*, 15–millionth of a meter) thick layer of gold plating to copper components, not that the components are solid gold.

[11]     Intel and AMD are the two leading producers of consumer personal computer CPUs. As Intel describes, a central processing unit, or CPU, is the brain of a computer that performs complex mathematical operations and calculations necessary to power a computer. *See What is a Microprocessor?*, http://download.intel.com/newsroom/kits/40thanniversary/pdfs/ What_is_a_Microprocessor.pdf (last visited Apr. 17, 2014.)

[12]     The chipset on a motherboard acts as the blueprints for how the computer's components communicate with one another. Allegra, Francis M., Garrie, Daniel B., *Plugged In: Guidebook to Software and the Law* § 1:7. "The chipset determines the type of processor the motherboard accepts, the type and capacity of RAM, and the internal and external devices that the motherboard accepts." *Id.*

---

ASRock Fatal1ty motherboards' functionality, and are subject to certain technical limitations.

28.     For example, Defendants integrated the Intel Z87 Chipset into their ASRock Fatal1ty Z87 line of motherboards.[13] Intel states in its documentation that the Z87 Chipset uses the PCIe (*i.e.*, PCI express) revision 3.0 standard to interface graphics cards with motherboards.[14]

29.     The PCISIG group that developed the PCIe 3.0 standard specifies that its maximum transfer speed is 8 "gigatransfers" per second.[15] Thus, all motherboards utilizing the PCIe 3.0 standard for graphics card slots have the communications speed between the motherboard and graphics card limited to 8 gigatransfers per second. The ASRock Fatal1ty motherboards are also bound by this these limits because they rely on the PCIe 3.0 standard.[16]

30.     As a result, the ASRock Fatal1ty motherboards' graphics card slots cannot be both PCIe 3.0 compliant and provide "triple" performance. To achieve "triple" performance, Defendants Fatal1ty motherboards would need to integrate components capable of providing triple the speeds of the PCIe 3.0 standard (*i.e.*, 24 gigatransfers per seconds). But that's not the case. Defendants state in the ASRock Fatal1ty motherboards' manual that the motherboards have "PCI Express 3.0" slots just like other comparable motherboards. Defendants then merely coated the standard PCIe slot in gold and advertised that it offers "triple" the performance. And the reality is, Defendants' claim of triple performance due to a gold coating has no basis in truth.

---

[13]     Similarly, Defendants' 990FX Killer, B85 Killer, and FM2A88X+ Killer motherboards integrate Intel or AMD chipsets that govern the specific performance capabilities of the graphics card slot.

[14]     *ARK | Intel&#174; Z87 Chipset*, http://ark.intel.com/products/75013 (last visited Apr. 14, 2014.)

[15]     *PCI-SIG - PCI Express Base 3.0 Specification*, http://www.pcisig.com/specifications /pciexpress/base3/ (last visited Apr. 10, 2014.)

[16]     ASRock *PCIe Gen3 series*, http://www.asrock.com/microsite/pcie3/overview.html (last visited Apr. 10, 2014).

3. *Defendants falsely claim that their technical descriptions are "Proven by Experiments."*

31.     In an effort to boost the legitimacy of their statements about the ASRock Fatal1ty motherboards' capabilities, Defendants falsely claim in their marketing materials that such descriptions have been "proven by experiments." (See <u>Figure 7</u>, showing the "Proven by Experiments" text proximate to Defendants' representations about the motherboards' features.)



(**Figure 7**.)

32.     Yet, for the reasons discussed in <u>Sections II.1 and II.2</u> above, it's not plausible that any credible experimentation could substantiate Defendants' claims about the Killer LAN or Gold Finger features. For instance, even if these alleged experimenters were able to establish some unique factual circumstance under which an ASRock Fatal1ty motherboard user's networking performance was increased five-fold, it would still be misleading (for the reasons described in <u>Section II.1</u>) to categorically represent that the Killer LAN provides such gains for *all* users.

33.     Similarly, and as discussed in <u>Section II.1</u>, it is a technological impossibility to reduce latency by 136%. Thus, no reliable experiment could yield those results.

34.     In truth, Defendants invented the purported specifications above to deceive gamers into purchasing the ASRock Fatal1ty motherboards. Knowing that average consumers are unable to discern the falsehood of their representations, Defendants also inserted "Proven by Experiments" onto the ASRock Fatal1ty motherboards' packaging and websites to lend an air of credibility to these specifications.[17]

---

[17]     Defendants' conduct also casts serious doubt on their other representations (not discussed in this Complaint) about the ASRock Fatal1ty motherboard, including that the product "boosts up USB speed up to five times faster, making daily tasks more efficient." *See Newegg.com - ASRock Fatal1ty Z87 Killer LGA 1150 Intel Z87 HDMI SATA 6Gb&#47;s*

**III.     Plaintiff Smith's Experience with his ASRock Fatal1ty Motherboard.**

35.     In or around January 2014, Plaintiff Smith purchased an ASRock Fatal1ty Z87 Killer Series motherboard for $124.99 from the online retailer NewEgg.com.

36.     Before purchasing the motherboard, Plaintiff Smith saw representations regarding the Killer LAN and Gold Finger features similar to those in Figures 1–7. Specifically, Plaintiff Smith saw representations that the motherboard was capable of improving his networking performance by "5X" and reducing his network latency by 136%, that the gold plated Gold Finger PCIe slot was capable of triple performance, and that the performance claims were backed up by experiments conducted by Defendants.

37.     Unfortunately, and as described herein, the ASRock Fatal1ty Z87 Killer Series motherboard was not capable of performing as advertised. Specifically, the Killer LAN was not capable of providing five times networking performance or reducing latency by 136%, the Gold Finger PCIe slot was not capable of providing any performance increase, and no experiments or tests could produce such results.

38.     Smith reasonably relied upon Defendants' express representations about the ASRock Fatal1ty Z87 Killer Series motherboards' performance in choosing to purchase that product. Namely, that the Killer LAN would improve his network performance and reduce his network latency, that Gold Finger would provide triple performance, and that these claims were true because Defendants conducted experiments and/or tests. But for these representations, Smith would not have purchased the ASRock Fatal1ty Z87 Killer Series motherboard or would have paid less money for it. Plaintiff has suffered damages as the result of Defendants' misrepresentations in the form of money paid to purchase the ASRock Fatal1ty Z87 Killer Series motherboard.

**CLASS ALLEGATIONS**

39.     **Class Definition:** Plaintiff Smith brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of similarly

---

*USB 3.0 ATX Intel Gaming Motherboard*, http://www.newegg.com/Product/ Product.aspx?Item=N82E16813157460 (last visited Apr. 17, 2014.)

situated individuals defined as follows:

> All individuals and entities in the United States that purchased an ASRock Fatal1ty Z87 Killer, 990FX Killer, B85 Killer, or FM2A88X+ Killer motherboard.

Excluded from the Class and are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entity's current and former employees, officers, and directors, (2) the Judge to whom this case is assigned and the Judge's immediate family, (3) persons who execute and file a timely request for exclusion from the Class, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

40. **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of thousands of individuals and other entities. Class members can be easily identified through Defendants' records.

41. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

a) Whether Defendants intentionally misrepresented that the Killer LAN is capable of improving network performance and decreasing network latency;

b) Whether Defendants intentionally misrepresented that the 15μ Gold Finger PCIe slot is capable of providing any performance increase;

c) Whether Defendants intentionally misrepresented that they conducted experiments and/or tests that substantiate advertised performance claims;

d) Whether Defendants' conduct described herein was willful;

e) Whether Defendants' conduct described herein constitutes a violation

of California's Consumers Legal Remedies Act (Ca. Civ. Code. § 1750 *et seq.*);

f)   Whether Defendants' conduct described herein constitutes a violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*);

g)   Whether Defendants' conduct described herein constitutes a violation of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, *et seq.*);

h)   Whether Defendants' conduct described herein constitutes Fraud in the Inducement; and

i)   Whether Defendants' conduct described herein constitutes a breach of contract.

42.   **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

43.   **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Class.

44.   **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect the members of the Class uniformly and Plaintiff's

1  challenge of these policies hinges on Defendants' conduct with respect to the Class as a

2  whole, not on facts or law applicable only to Plaintiff.

3       45.    **Superiority**: This class action is also appropriate for certification because

4  class proceedings are superior to all other available methods for the fair and efficient

5  adjudication of this controversy and joinder of all members of the Class is impracticable. The

6  damages suffered by the individual members of the Class will likely be small relative to the

7  burden and expense of individual prosecution of the complex litigation necessitated by

8  Defendants' wrongful conduct. Thus, it would be virtually impossible for the individual

9  members of the Class to obtain effective relief from Defendants' misconduct. Even if

10  members of the Class could sustain such individual litigation, it would not be preferable to a

11  class action because individual litigation would increase the delay and expense to all parties

12  due to the complex legal and factual controversies presented in this Complaint. By contrast, a

13  class action presents far fewer management difficulties and provides the benefits of single

14  adjudication, economy of scale, and comprehensive supervision by a single court. Economies

15  of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

16       46.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and

17  "Class Definition" based on facts learned through additional investigation and in discovery.

18
                               **FIRST CAUSE OF ACTION**
19
              **Violation of Consumers Legal Remedies Act**
                     **Cal. Civ. Code § 1750, *et seq.***
20
               **(On Behalf of Plaintiff and the Class)**

21       47.    Plaintiff incorporates by reference the foregoing allegations as if fully set

forth herein.

22       48.    The Consumers Legal Remedies Act ("CLRA") applies to Defendants'

23  actions and conduct as described herein because it extends to transactions that are intended to

24  result, or which have resulted, in the sale of goods or services to consumers.

25       49.    Defendants are "persons" as defined by Cal. Civ. Code § 1761(c).

26       50.    Plaintiff and each member of the Class are "consumers" as defined by Cal.

27  Civ. Code § 1761(a).

28       51.    Defendants' ASRock Fatal1ty motherboards are "goods" within the meaning

1  of Cal. Civ. Code § 1761(a).

2  52. As described herein, Defendants have engaged in deceptive practices,

3  unlawful methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750 *et*

4  *seq.*, to the detriment of Plaintiff and the Class.

5  53. Defendants, acting with knowledge, intentionally and unlawfully brought

6  harm upon Plaintiff and the Class by representing that the ASRock Fatal1ty motherboards

7  would be capable of providing "5X" networking performance, reducing latency by "136%,"

8  and providing "triple" graphics performance, and that such results have been "Proven by

9  Experiments" when in fact Defendants representations were impossible to achieve and

10  substantiate through experiments.

11  54. Specifically, Defendants violated Cal. Civ. Code § 1750 in at least the

12  following respects:

13  a. In violation of § 1770(5), representing that the ASRock Fatal1ty

14  motherboards had characteristics, ingredients, uses, benefits, or

15  quantities which it did not have;

16  b. In violation of § 1770(7), representing that the ASRock Fatal1ty

17  motherboards was of a particular standard, quality, or grade of which it

18  is not; and

19  c. In violation of § 1770(9), advertising the ASRock Fatal1ty

20  motherboards with the intent not to sell their goods as advertised.

21  55. Defendants' unfair or deceptive acts or practices were capable of deceiving a

22  substantial portion of the purchasing public.

23  56. Defendants knew that they were unable or unwilling to manufacture and sell

24  motherboards capable of performing as advertised at the time that they made representations

25  claiming that the ASRock Fatal1ty motherboards were capable of providing "5X"

26  networking performance, reducing latency by "136%," and providing "triple" graphics

27  performance, and that such results are "Proven by Experiments."

28  57. Once Defendants made specific public representations regarding the

performance capabilities of the ASRock Fatal1ty motherboards, Defendants were under a duty to Plaintiff and the Class to disclose their inability or unwillingness to manufacture and sell motherboards capable of performing as advertised because:

      a.    Defendants were in a superior position to know the true state of facts about the performance capabilities of the ASRock Fatal1ty motherboards;

      b.    Plaintiff and the Class could not reasonably have been expected to learn or discover that Defendants did not manufacture the motherboards to be capable of performing as advertised;

      c.    Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that the ASRock Fatal1ty motherboards were not capable of performing as advertised; and

      d.    Defendants knew, and in fact intended, that Plaintiff and the Class members would rely on Defendants' representations regarding the motherboards' performance capabilities in choosing whether or not to purchase the ASRock Fatal1ty motherboards.

58.    In failing to disclose their inability or unwillingness to manufacture and sell motherboards that performed as advertised, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

59.    The facts concealed or not disclosed by Defendants, including that the motherboards are not capable of providing "5X" networking performance, reducing latency by "136%," and providing "triple" graphics performance, and that such results have not been "Proven by Experiments," to Plaintiff and the Class are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the ASRock Fatal1ty motherboards.

60.    Plaintiff and the Class reasonably expect their motherboards to be capable of performing as Defendants advertised based upon Defendants' representations found online

and on the motherboards' packaging. Plaintiff's and Class members' expectations were reasonable under the circumstances.

61.     The performance capabilities of the ASRock Fatal1ty motherboards is and was a material selling point of Defendants' motherboards, and a primary reason to purchase the motherboards.

62.     Plaintiff and members of the Class relied on the representations made by Defendants about the performance capabilities of the ASRock Fatal1ty motherboards when purchasing the motherboards.

63.     Defendants' false representations about the performance capabilities of the ASRock Fatal1ty motherboards was an act likely to mislead Plaintiff and the members of the Class acting reasonably under the circumstances.

64.     Through the misrepresentations and omissions detailed herein, Defendants wrongfully induced Plaintiff and the other members of the Class to purchase the ASRock Fatal1ty motherboards when they otherwise would not have purchased the motherboard or would have only agreed to purchase it at a lower price.

65.     As a direct and proximate result of Defendants' violation of Cal. Civ. Code § 1750, *et seq.*, Plaintiff and each Class member have suffered harm in the form of paying monies to Defendants without receiving the entire benefit of his or her bargain.

66.     Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf of the Class, seeks an injunction requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, and all other appropriate remedies for their violations of the CLRA. For the sake of clarity, Plaintiff explicitly disclaims any claim for damages under the CLRA at this time.

### SECOND CAUSE OF ACTION
**Violations of California's Unfair Competition Law
Cal. Bus. & Prof. Code §§ 17200, *et seq.*
(On Behalf of Plaintiff and the Class)**

67.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

68.     California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code

§§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

69.     The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria to be considered unfair competition.

70.     The performance capabilities of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the performance capabilities of a product is materially misleading.

71.     As described herein, Defendants have engaged in deceptive business practices, as defined by the UCL, by misrepresenting that the ASRock Fatal1ty motherboards are capable of providing "5X" networking performance, reducing latency by "136%," and providing "triple" graphics performance, and that such results are "Proven by Experiments."

72.     Defendants' representations were, in fact, false. Defendants' motherboards do not (and cannot) actually meet the advertised performance and no experiments or tests can substantiate their claims. In particular, Defendants' Killer LAN and Gold Finger features do not and cannot provide any advertised increase in performance.

73.     Defendants have violated the fraudulent prong of the UCL by knowingly making false representations to consumers—including Plaintiff and the Class—regarding the ASRock Fatal1ty motherboards' ability to provide "5X" networking performance, reduce latency by "136%," and provide "triple" graphics performance, and that such results are "Proven by Experiments." These representations were made in an effort to convince consumers to purchase the ASRock Fatal1ty motherboards.

74.     Reasonable consumers are likely to be, and Plaintiff and the Class were, deceived by Defendants' misrepresentations about the full performance capabilities of the ASRock Fatal1ty motherboards.

75.     Defendants also violated the UCL's unfair prong by causing substantial injury

to consumers through their fraudulent conduct described above. The injuries caused by Defendants' unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Given the information asymmetry between Defendants and consumers regarding the ASRock Fatal1ty motherboards' performance capabilities, Defendants knew or had reason to know that Plaintiff and the Class could not have reasonably known or discovered the falsity of representations about the motherboards' performance capabilities.

76.     Defendants' fraudulent and unfair conduct occurred during the marketing and sale of computer motherboard products, and therefore occurred in the course of Defendants' business practices.

77.     Defendants' fraudulent and unfair conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for their ASRock Fatal1ty motherboards—typically $100 to $300—or, at least, the difference between what they paid for the motherboards and their actual value.

78.     But for Defendants' conduct as described herein, Plaintiff and the Class would not have purchased the ASRock Fatal1ty motherboards, or would have paid substantially less for them.

79.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring Defendants to cease the unfair practices described herein; (2) requiring Defendants to restore to Plaintiff and each Class member any money acquired by means of unfair competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**THIRD CAUSE OF ACTION**
**Violation of False Advertising Law**
**Cal. Bus. & Prof. Code §§ 17500 *et seq.***
**(On Behalf of Plaintiff and the Class)**

80.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

81.     California's False and Misleading Advertising Law ("FAL") prohibits corporations from intentionally disseminating advertisements for products or services that are "unfair, deceptive, untrue, or misleading." Cal. Bus. & Prof. Code §17500.

82.     As depicted in <u>Figures 1–7</u> and detailed throughout this Complaint, Defendants have disseminated unfair, deceptive, untrue, and misleading advertisements that claim the ASRock Fatal1ty motherboards are capable of providing "5X" networking performance, reducing latency by "136%," and providing "triple" graphics performance, and that such results are "Proven by Experiments." <u>Section II</u> above details why these advertisements are false and misleading, and designed to convince consumers to purchase the motherboards. In short, Defendants' advertisements must be false because they advertise performance results that are impossible to obtain.

83.     A reasonable person is likely to be deceived by Defendants' advertisements.

84.     Defendants knew or should have known when creating and disseminating these advertisements that they contained materially false and misleading information. As the developers, engineers, and distributors of the ASRock Fatal1ty motherboards, Defendants are intimately familiar with the motherboards' functionality. Thus, it's reasonable to infer that Defendants are aware of the fact that the ASRock Fatal1ty motherboards are not capable of performing as advertised.

85.     Defendants' conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the ASRock Fatal1ty motherboards —typically $100 to $300—or, at least, the difference between what they paid for the motherboards and their actual value.

86.     Plaintiff seeks an order (1) requiring Defendants to cease the false advertising practices described herein; (2) requiring Defendants to restore to Class members any money acquired by means of false advertising (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

**FOURTH CAUSE OF ACTION**
**Fraud in the Inducement**
**(On Behalf of Plaintiff and the Class)**

87.     Plaintiff incorporates by reference the foregoing allegations.

88.     As described with particularity herein, Defendants have designed, overseen, and disseminated false and misleading advertising for their ASRock Fatal1ty motherboards.

This conduct includes, but is not limited to, Defendants promoting and advertising that the Killer LAN feature was capable of providing five times the networking performance and a "136%" reduction in latency, the Gold Finger feature was capable of providing "triple" graphics performance, and their claims were all "Proven by Experiments" when Defendants knew or should have known that the features were not capable of such performance and that no "experiments" or tests could support the advertised results.

89.   By committing the acts alleged in this Complaint, Defendants have designed and disseminated untrue and misleading statements through fraudulent advertising in order to sell or induce members of the public to purchase ASRock Fatal1ty motherboards.

90.   The performance of a motherboard is a material term of any transaction for a motherboard because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a particular motherboard. Any deception of fraud related to the performance of a motherboard is materially misleading.

91.   Misrepresentations regarding a motherboard's performance are likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

92.   Defendants knew or should have known of the falsity of the representations it made regarding the performance of their ASRock Fatal1ty motherboards.

93.   Defendants intended that the deceptive and fraudulent misrepresentations it made would induce a consumer to rely and act by purchasing an ASRock Fatal1ty motherboard.

94.   Defendants charged and collected from Plaintiff and members of the Class monies for a product that did not and could not meet the advertised performance. Accordingly, Plaintiff and the members of the Class have suffered injury in fact and lost money in justifiable reliance on Defendants' misrepresentations of material fact.

95.   In deceiving Plaintiff and the Class by misrepresenting the actual performance of the ASRock Fatal1ty motherboards, and inducing Plaintiff and the Class to proffer payment based on those misrepresentations, Defendants have engaged in and have, and/or continue to have, direct knowledge of fraudulent practices designed to mislead and deceive

consumers.

96.    Plaintiff and the Class have suffered harm as a proximate result of Defendants' violations of law and wrongful conduct.

97.    Plaintiff, on behalf of himself and the Class, seeks damages from Defendants' unlawful conduct.

**FIFTH CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

98.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

99.    Plaintiff and members of the Class entered into agreements with Defendants whereby Defendants agreed to sell, and Plaintiff and the Class agreed to purchase motherboards that would have the performance capability advertised by Defendants.

100.    Based on the foregoing representations, Plaintiff and the Class paid, and Defendants accepted, the ASRock Fatal1ty's purchase price, and therefore performed their obligations under the contracts.

101.    As such, Defendants voluntarily assumed a contractual obligation to provide Plaintiff and the Class with motherboards that performed as advertised. This obligation is a material term of the agreement. Defendants did not honor this obligation.

102.    Defendants breached their contracts with Plaintiff and the Class by intentionally designing and distributing ASRock Fatal1ty motherboards that don't have the performance capabilities as advertised.

103.    The aforementioned breaches of contract have directly and proximately caused Plaintiff and the Class economic injury and other damages, including in the form of the purchase price (typically between $100 and $300) of the ASRock Fatal1ty motherboards, because they purchased a product that does not perform as Defendants promised, and therefore lacks the utility contracted for.

104.    As a result, Plaintiff and the Class request that the Court enjoin Defendants from continuing to misrepresent the performance of their ASRock Fatal1ty motherboards.

1  Plaintiff and the Class also seek relief in the amount of the purchase price that they paid for

2  the ASRock Fatal1ty motherboards.

3                                    **PRAYER FOR RELIEF**

4              WHEREFORE, Plaintiff Joshua Smith on behalf of himself and the Class respectfully

5  requests that the Court enter an order:

6              A.      Certifying this case as a class action on behalf of the Class defined above,

7  appointing Joshua Smith as representative of the Class, and appointing his counsel as class

8  counsel;

9              B.      Declaring that Defendants' actions, as set out above, violate the CLRA (Cal.

10  Civ. Code §§ 1750, *et seq.*); UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*); the FAL (Cal.

11  Bus. & Prof. Code §§ 17500, *et seq.*), and constitute fraud in the inducement, and breach of

12  contract;

13             C.      Awarding damages, including statutory and punitive damages where

14  applicable, to Plaintiff and the Class in an amount to be determined at trial;

15             D.      Awarding Plaintiff and the Class their reasonable litigation expenses and

16  attorneys' fees;

17             E.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent

18  allowable;

19             F.      Awarding such other injunctive and declaratory relief as is necessary to

20  protect the interests of Plaintiff and the Class; and

21             G.      Awarding such other and further relief as the Court deems reasonable and just.

22

23

24

25

26

27

28

1

## DEMAND FOR JURY TRIAL

2
            Plaintiff demands a trial by jury for all issues so triable.

3

4                                         Respectfully submitted,

5
   Dated:  April 21, 2014                JOSHUA SMITH, individually and on behalf
6                                         of all others similarly situated,

7                                         By:  /s/ Mark Eisen
                                              One of Plaintiff's Attorneys
8
                                          Mark Eisen (SBN - 289009)
9                                         meisen@edelson.com
                                          EDELSON PC
10                                        555 West Fifth Street, 31st Floor
                                          Los Angeles, California 90013
11                                        Tel: 213.533.4100
                                          Fax: 213.947.4251
12
                                          Jay Edelson*
13                                        jedelson@edelson.com
                                          Rafey S. Balabanian*
14                                        rbalabanian@edelson.com
                                          Benjamin S. Thomassen*
15                                        bthomassen@edelson.com
                                          Amir Missaghi*
16                                        amissaghi@edelson.com
                                          EDELSON PC
17                                        350 North LaSalle Street, Suite 1300
                                          Chicago, Illinois 60654
18                                        Tel: 312.589.6370
                                          Fax: 312.589.6378
19
                                          *Pro hac vice admission to be sought.
20
                                          Attorneys for Plaintiff and the Putative Class
21

22

23

24

25

26

27

28