Mark S. Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin S. Thomassen (Admitted *Pro Hac Vice*)
bthomassen@edelson.com
Amir Missaghi (Admitted *Pro Hac Vice*)
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Putative Class*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JOSHUA SMITH, individually and on behalf of all others similarly situated, | Case No. 3:14-cv-01822-CRB |
| *Plaintiff,* | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| *v.* | |
| PEGATRON USA, INC., a California corporation, ASROCK AMERICA, INC., a California corporation, and FATALITY, INC., d/b/a Fatal1ty, Inc., a Missouri corporation, | Date:        August 22, 2014<br>Time:        10:00 a.m.<br>Courtroom: 6, 17th Floor<br>Judge:      Hon. Charles R. Breyer |
| *Defendants.* | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... ii

SUMMARY OF ARGUMENT ................................................................................... iv

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.     FACTUAL AND PROCEDURAL BACKGROUND .......................................1

     A.    Defendants Misrepresent their Motherboards' Capabilities Through their Websites, Marketing Materials, and Product Packaging. ......................1

     B.    Procedural History..................................................................................2

II.    ARGUMENT .........................................................................................................2

     A.    Plaintiff's Fraud-Based Claims Satisfy the Requirements of Rule 9(b). ..........2

          1.    Plaintiff sufficiently alleges where and when the specific representations were displayed, who developed them, and how they are deceptive .................................................................................2

          2.    Plaintiff sufficiently alleges Defendants' joint participation in developing and disseminating the false and misleading representations.......................4

     B.    California's Consumer Protection Statutes Should be Applied Extraterritorially Because Defendants' Fraudulent Conduct Emanated From California. ......................................................................................6

     C.    Plaintiff Properly Alleges Claims for False and Deceptive Advertising. ..........8

          1.    At the pleading stage, Plaintiff need not prove that Defendants' misrepresentations are false—only that a reasonable consumer would likely be deceived by them, which he has sufficiently demonstrated..........9

          2.    Plaintiff does not assert a lack of substantiation claim. ............................11

          3.    Defendants' lack of substantiation arguments fail because Defendants put the experimental evidence for their representations at issue. ..............13

     D.    Plaintiff Sufficiently Pleads a Breach of Express Warranties Claim.............13

     E.    Plaintiff Has Properly Pleaded a Claim for Unjust Enrichment...................14

III.   CONCLUSION ...................................................................................................15

1

**TABLE OF AUTHORITIES**

2

**UNITED STATES CIRCUIT COURT OF APPEALS CASES:**

3

*Sanford v. MemberWorks, Inc.*, 625 F.3d 550 (9th Cir. 2010) ........................................................2

4

*Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204 (9th Cir. 2013)............................................1, 10

5

6

*Williams v. Gerber Prods., Co.*, 523 F.3d 934 (9th Cir. 2008)...................................................3, 9

7

**UNITED STATES DISTRICT COURT CASES:**

8

9

*Ally Bank v. Castle*, No. 11-CV-896 YGR, 2012 WL 3627631 (N.D. Cal. Aug. 20, 2012) ...........5

10

*Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB,
    2013 WL 5731817 (N.D. Cal. Oct. 22, 2013)............................................................11, 13

11

*Cabral v. Supple, LLC*, No. 5:12–cv–0085 MWF (OPx) (C.D. Cal. July 3, 2012).....................13

12

13

*Dorfman v. Nutramax Labs, Inc.*, No. 13-cv-0873-WQH-RBB,
    2013 WL 5353043 (S.D. Cal. Sept. 23, 2013)..................................................................11

14

*Eckler v. Wal-Mart Stores, Inc.*, No. 12-cv-727-LAB-MDD,
    2012 WL 5382218, (S.D. Cal. Nov. 1, 2012) ....................................................................11

15

16

*E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141 (E.D. Cal. 2013) ....................5

17

*Edmunson v. Procter & Gamble Co.*, No. 10-cv-2256-NLS,
    2011 WL 1897625 (S.D. Cal. May 17, 2011)...................................................................14

18

19

*Fields v. Wise Media, LLC*, No. C 12-05160 WHA,
    2013 WL 3187414 (N.D. Cal. June 21, 2013)....................................................................5

20

21

*Fraker v. Bayer Corp.*, CVF08-1564 AWI GSA, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ...11

22

*Fulford v. Logitech, Inc.*, No. 08-cv-2041 MMC,
    2008 WL 4914416 (N.D. Cal. Nov. 14, 2008) ................................................................14

23

24

*Germain v. J.C. Penney Co.*, No. CV 09–2847,
    2009 WL 1971336 (C.D. Cal. July 6, 2009)........................................................................4

25

*Gross v. Symantec Corp.*, No. 12-cv-00154, 2012 WL 3116158 (N.D. Cal. July 31, 2012) ..........8

26

*Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100 (N.D. Cal. 2013)......................................9

27

28

*Hawkeye-Sec. Ins. Co. v. Bunch*, 740 F. Supp. 2d 1072 (E.D. Mo. 2010) .................................10

*Hughes v. Ester C Co.*, No. 12-cv-0041 JFB ETB, 2013 WL 1080533 (E.D.N.Y.) ...................13

*Humphrey v. U.S. Bank, N.A.*, No. 11-cv-272-GKF-PJC,
    2012 WL 28075 (N.D. Okla. Jan. 5, 2012).............................................................................3

*In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224 (N.D. Cal. 2012) .........................................12

*In re Ferrero Litig.*, 794 F. Supp. 2d 1107 (S.D. Cal. 2011) ..........................................................9

*In re Toyota Motor Corp.*, 785 F. Supp. 2d 883 (C.D. Cal. 2010) ..............................................6, 8

*McCrary v. Elations Co., LLC*, No. 13-cv-0242 JGB OPX,
    2013 WL 6403073 (C.D. Cal. July 12, 2013) .....................................................................13

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008)..............................................6

*Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066 (S.D. Cal. 2011) ......................................3

*Process Specialties, Inc. v. Sematech, Inc.*, No. 00-cv-414 FCD PAN,
    2001 WL 36105562 (E.D. Cal. Nov. 8, 2001) ....................................................................15

*Scheuerman v. Nestle Healthcare Nutrition, Inc.*, 10-cv-3684-FSH PS,
    2012 WL 2916827 (D.N.J. July 16, 2012).........................................................................12

*Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177 (C.D. Cal. 2011)....................................6

*Tietsworth v. Sears*, 720 F. Supp. 2d 1123 (N.D. Cal. 2010) ........................................................14

*Vasic v. Patent Health, LLC*, No. 13-cv-849 AJB MDD,
    2014 WL 940323 (S.D. Cal. Mar. 10, 2014) .....................................................................12

*Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073 (N.D. Cal. 2011) ..........................................3

*Wolk v. Green*, 516 F. Supp. 2d 1121 (N.D. Cal. 2007) ...............................................................15


**STATE COURT CASES:**

*Cnty of San Bernardino v. Walsh*, 158 Cal. App. 4th 553 (2007) ................................................15

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (2003)......................9

*Kasky v. Nike, Inc.*, 27 Cal. 4th 939 (2002) ...................................................................................9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Morgan v. A T & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235 (2009) ......................................9

**MISCELLANEOUS:**

Restatement (Second) of Torts § 533 (1977)..............................................................................5

*U.S. and World Population Check*, United States Census Bureau,
    http://www.census.gov/popclock/.......................................................................................7

1

## SUMMARY OF ARGUMENT

2       Through this action, Plaintiff Joshua Smith ("Plaintiff") challenges and seeks relief for the

3   deceptive marketing of the "ASRock Fatal1ty" brand of motherboards[1]—computer hardware

4   developed, manufactured, and marketed by Defendants Pegatron USA, Inc. ("Pegatron"), ASRock

5   America, Inc. ("ASRock"), and Fatality, Inc. ("Fatal1ty") (collectively, "Defendants"). Through

6   advertisements and representations displayed on Defendants' websites, third-party online retail

7   stores, and the motherboards' physical packaging, Defendants fabricate and misrepresent facts

8   about their products' technical capabilities in hopes of convincing consumers to buy their hardware.

9   Specifically, Plaintiff alleges that Defendants' advertisements are patently false and inherently

10  deceiving in light of the technical constraints of their component parts, meaning that *no* scientific

11  evidence could possibly support such representations. As such, Plaintiff and other putative Class

12  members were deceived into paying for products that do not—and cannot—meet the technical

13  specifications that Defendants promised.

14      Accordingly, through his First Amended Complaint ("FAC") (Dkt. 34), Plaintiff contends

15  that Defendants violated (1) the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code

16  §§ 1750, *et seq.*; (2) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

17  §§ 17200, *et seq.*; (3) and California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500,

18  and alleges that their conduct constitutes (4) fraud in the inducement, (5) a breach of express

19  warranties, and (6) unjust enrichment.

20      Tasked with defending advertisements that are undeniably false, Defendants' Motion to

21  Dismiss ("Mot.") (Dkt. 36) presses a hodgepodge of arguments to avoid Plaintiff's claims—all of

22  which lack merit. First, Defendants seek refuge under Rule 9(b), claiming that the FAC fails to

23  plead fraud with the requisite particularity. But in doing so, Defendants misstate both the Rule 9(b)

24  standard and Plaintiff's allegations. The FAC establishes the circumstances of Defendants' fraud

25

---

26  [1]     A motherboard is the "main circuit board" of a computer, which contains the central
processing unit and main system memory, as well as the circuitry that controls the disk drives,
27  keyboard, monitor, and other peripheral devices. (FAC ¶ 1 n.2.)

28

1    with exacting detail: it quotes the at-issue advertisements and representations verbatim, includes

2    examples as exhibits, and is replete with details about where and when the representations were

3    displayed, how they are deceiving, and the location from which they emanate. Further, Plaintiff

4    *specifically* alleges that all three Defendants acted in concert when developing and disseminating

5    the false and deceptive advertisements at issue. In short, Plaintiff's allegations give Defendants

6    more than enough notice to be able to defend against them, and are in full compliance with the

7    pleading standards of Rule 9(b).

8         Second, Defendants seek dismissal of Plaintiff's first, second, third, and fifth claims under

9    Rule 12(b)(6) because the FAC supposedly fails to justify the extraterritorial application of

10   California law to Plaintiff, a New Hampshire resident. But this argument rests on flawed legal

11   premises and disregards the core factual allegations of this lawsuit. This case is based entirely on

12   certain of Defendants' false and deceptive representations concerning the ASRock Fatal1ty

13   motherboards, *all of which* are alleged to have emanated—at Defendants' direction—from

14   ASRock's Sales and Marketing Department (located in California), Pegatron USA's offices

15   (located in California), or from non-party Auravision, Fatal1ty's retained PR firm (located in

16   California). As this case centers on Defendants' California-based marketing efforts, the

17   extraterritorial application of California law is more than justified.

18        Third, Defendants contend that Plaintiff fails to state an actionable claim under the UCL,

19   CLRA, and FAL. This attack fails as well, for at least three reasons. To start, Defendants argue that

20   Plaintiff has not shown (through his allegations) and cannot show (based on Defendants' factual

21   challenges to the FAC) that the advertisements at issue are false. But Defendants use the wrong

22   standard by claiming that Plaintiff must *prove* the falsity of Defendants' representations at the

23   pleadings stage (even though his statutory claims only require allegations showing a likelihood of

24   deception to the reasonable consumer, which he has done) and none of Defendants' factual

25   challenges to the FAC—even if they could be considered at this stage—can offset the misleading

26   nature of the advertisements at issue. Second, Defendants hope to recast Plaintiff's allegations as

27

28

1    ones premised upon a lack of substantiation, and argue that the lack of a private right of action for

2    such claims warrants dismissal. But in doing so, Defendants ask the Court to ignore that Plaintiff

3    doesn't argue that Defendants' statements are based on inconclusive or unsubstantiated scientific

4    evidence. Rather, he alleges that Defendants' representations are patently false. Finally, even

5    assuming, *arguendo*, that Plaintiff's claims were based upon a lack of substantiation (they are not),

6    they would still be actionable because Defendants put their experimental proof at issue by publicly

7    touting that their representations are "proven by experiments."

8         Fourth, Defendants' attacks on Plaintiff's breach of express warranty claim are unavailing

9    for many of the same reasons discussed above. California's express warranty law may be applied to

10   out-of-state residents for the same reasons that its consumer protection statutes can, and Defendants

11   do not (and cannot) contest that Plaintiff has sufficiently pleaded an independent cause of action for

12   breach of express warranty.

13        Fifth, and finally, Defendants' argument that Plaintiff's unjust enrichment claim should be

14   dismissed because he supposedly fails to allege that Defendants directly received a benefit ignores

15   the plain allegations of the FAC, which state that Defendants collected money from the sale of their

16   motherboards. Besides, Defendants cannot credibly argue that they received no benefit from the

17   sale of their retail products to consumers, even if such products were purchased from third-party

18   retailers.

19        For these reasons, and as discussed more fully in the accompanying Memorandum of Points

20   and Authorities, Defendants' Motion to Dismiss should be denied in its entirety.

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

I.   **FACTUAL AND PROCEDURAL BACKGROUND[2]**

   A.   **Defendants Misrepresent their Motherboards' Capabilities Through their Websites, Marketing Materials, and Product Packaging.**

Defendants develop, manufacture, and market specialized hardware for computer gaming enthusiasts, including the ASRock Fatal1ty line of motherboards that are the focus of this case. (FAC ¶¶ 1, 13–14.) To entice gamers into purchasing their products, Defendants advertise, among other things, that their motherboards will specifically increase network speeds and graphics performance—two highly sought-after features for gamers. (*Id.* ¶ 3.) Given the technical constraints of the motherboards' component parts, however, Defendants' promised performance capabilities are impossibilities. (*Id.* ¶¶ 3, 19, 45–47.) Plaintiff is one of thousands of consumers who bought a motherboard in reliance on Defendants' deceptive marketing, only to find that the motherboard he purchased could not perform as advertised. (*Id.* ¶¶ 53–54.) Defendants fabricate and advertise such "facts" about their motherboards in order to boost sales of their gaming hardware. (*Id.* ¶ 3.)

Specifically, Plaintiff challenges the following four statements through which Defendants market their ASRock Fatal1ty line of motherboards:

   (1)   **"5X Networking Performance":** Plaintiff alleges that this statement is false because the E2200 component the motherboards utilize cannot quintuple networking performance, and because Defendants did not modify or configure the motherboards' components to reach such speeds (*Id.* ¶¶ 20–25);

   (2)   **"Latency Lowered up to 136%":** Plaintiff contends that Defendants' promise of a 136% reduction in latency[3] is "impossible" because any latency reduction in excess of 100% would defy the laws of physics (i.e., by requiring that communications arrive at their destination before they are sent) (*Id.* ¶¶ 29–34);

   (3)   **The Gold Finger VGA PCIe Slot "Delivers Triple Performance":** Plaintiff alleges that this claim, too, is impossible, because the motherboards are limited by their component chipsets (which can't triple performance) and because the motherboards' single gold-coated (i.e., "Gold Finger") PCIe slot provides no discernible performance increase over the motherboards' standard slots (*Id.* ¶¶ 35–43); and

---

[2]   On a motion to dismiss, all well-pleaded factual allegations in the complaint are taken as true. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1207 (9th Cir. 2013).

[3]   As explained in the FAC, latency is a measure of the speed at which an electronic communication travels from a sender to a recipient over the Internet. (FAC ¶ 29.)

(4) **"Proven by Experiments":** Plaintiff claims that proof of Defendants' claims by "experiments" is impossible, as the above-claimed features/benefits are themselves "impossible to achieve." (*Id.* ¶ 45.)[4]

Given these misrepresentations, Plaintiff seeks an injunction preventing Defendants from misrepresenting the performance of their motherboards in the future, and damages for himself and other consumers who purchased the motherboards relying on the misleading statements. (*Id.* ¶ 3.)

## B. Procedural History.

Plaintiff filed his original Complaint on April 21, 2014. (Dkt. 1.) On June 12, 2014, Defendants jointly moved to dismiss this action under Rules 9(b) and 12(b)(6), and to stay discovery under Rule 26(c). (Dkt. 29.) On June 26, 2014, in response to Defendants' motion, Plaintiff filed a Statement of Non-Opposition and Notice of Intent to File First Amended Complaint, preserving his right to oppose the arguments raised in Defendants' motion. (Dkt. 31.) On July 3, 2014, Plaintiff filed his First Amended Complaint. (Dkt. 34.) In the amended pleading, like the one before it, Plaintiff seeks to represent a nationwide class of consumers who purchased Defendants' motherboards in reliance on the representations outlined in the FAC. (*See* FAC ¶ 56.) On July 17, 2014, Defendants again moved for dismissal ("Mot."). (Dkt. 36.)

## II. ARGUMENT

### A. Plaintiff's Fraud-Based Claims Satisfy the Requirements of Rule 9(b).

1. Plaintiff sufficiently alleges where and when the specific representations were displayed, who developed them, and how they are deceptive.

Defendants first argue that Plaintiff fails to satisfy the pleading requirements of Rule 9(b), claiming he does not specify the "who, what, when, where, and how" of Defendants' fraud. (Mot. at 4–7.) But to do so, Defendants must ignore the clear allegations of the FAC and impose pleading requirements extending beyond those set by the Federal Rules.

To state a claim under Rule 9(b), a party must allege the time, place, and content of the fraudulent representations, as well as the identities of the parties to the misrepresentation (the "who"). *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). Rule 9(b) is read in harmony with Rule 8(a)—requiring only that a plaintiff identify "the circumstances constituting

---

[4] As outlined in the FAC, Defendants withdrew representations (1), (2) and (3) from their websites some time after Plaintiff filed his original Complaint. (*See* FAC ¶¶ 26–27, 33–34, 42–43).

fraud so that the defendant can prepare an adequate answer from the allegations." *Walsh v. Kindred*

*Healthcare*, 798 F. Supp. 2d 1073, 1081 (N.D. Cal. 2011); *see also Humphrey v. U.S. Bank, N.A.*,

No. 11-cv-272-GKF-PJC, 2012 WL 28075, at *5 (N.D. Okla. Jan. 5, 2012) (Rule 9(b) does not

require that a plaintiff "go so far as to give the defendant a pretrial memorandum containing all the

evidentiary support for [his] case.") (quotation omitted).

Here, Plaintiff provides the requisite time, place, content, and parties involved in

Defendants' fraudulent conduct. Specifically, he alleges that in January of 2014 ("when"), he saw

representations developed and disseminated by Defendants ("who") that claimed that the ASRock

Fatal1ty motherboards would deliver "5X" Network Performance," "Lower Latency . . . up to

136%," "provide[] 15μ gold components . . . for delivering triple performance," and were "proven

by experiments" ("what"). (FAC ¶¶ 49–54.) Plaintiff further alleges that the representations

(i) appeared on the motherboards' physical packaging, (ii) were displayed on Defendants' websites,

and (iii) were provided by Defendants to online retailers authorized to sell the motherboards (e.g.,

NewEgg.com) and displayed on those retailers' respective websites ("where"). (*Id*. ¶ 18.) Plaintiff

quotes from language used in the advertisements verbatim, identifies the specific URLs where those

representations appeared, attaches examples of the specific representations he viewed,[5] and alleges

that he relied on those representations in making his purchase.[6] (*Id*. ¶¶ 49–55). Finally, Plaintiff

alleges "how" the representations are deceptive (i.e., because average consumers are unable to

discern the impossibility of Defendants' claims), and why Defendants made these representations—

to boost sales by deceiving gamers to buy their motherboards. (*Id*. ¶¶ 3, 45–48.)

---

[5]     In light of these, among many other, specific factual allegations—especially the inclusion of *specific* URLs and exhibits detailing the aspects of Defendants' joint development and marketing of the ASRock Fatal1ty motherboards (*see, e.g.*, FAC ¶¶ 17 n.4, 18, 26 n.13, 27 n.14; Exhibits A–D)—Defendants' contention "that Plaintiff offers no specific facts on which his 'information and belief' is based other than the conclusory assertion of an 'investigation conducted by his attorneys'" makes no sense at all. (Mot. at 6.)

[6]     Defendants' suggestion that Plaintiff must allege that he actually used the motherboard and that it failed to perform as promised is mistaken. (*See* Mot. at 3.) There's no requirement that the purchaser of a product must actually use the product in order to establish reliance or injury resulting from such reliance. *Peviani v. Natural Balance, Inc.*, 774 F. Supp. 2d 1066, 1071 (S.D. Cal. 2011); *see also Williams v. Gerber Prods., Co.*, 523 F.3d 934 (9th Cir. 2008) (allowing UCL and CLRA claims based on a plaintiff's purchase of fruit juice snacks for her children's consumption).

---

PLAINTIFF'S OPPOSITION TO                                    3                         CASE NO. 3:14-cv-01822-CRB
DEFENDANTS' MOTION TO DISMISS

As such, Defendants cannot credibly contend that they are not on notice of the particular misconduct against which they must defend. *See Germain v. J.C. Penney Co.*, No. CV 09–2847, 2009 WL 1971336, at *4-5 (C.D. Cal. July 6, 2009). The FAC sets out the precise details of Defendants' fraud, and Rule 9(b) requires nothing more.

> 2. <u>Plaintiff sufficiently alleges Defendants' joint participation in developing and disseminating the false and misleading representations.</u>

Even though the FAC identifies the "who" of the subject marketing scheme (Defendants, working in concert), Defendants contend that Rule 9(b) is still not satisfied because, in their view, the FAC "does not distinguish" between the Defendants—i.e., by identifying exactly "who" did "what." (Mot. at 5.) Defendants are wrong.

To start, Rule 9(b) does not require that allegations must be made as to each defendant separately—particularly in cases where, as here, Plaintiff specifically and purposefully alleges that *all three* Defendants worked in concert to develop and disseminate the advertisements at issue. Even Defendants' own authority recognizes as much. Thus, while Rule 9(b) prohibits plaintiffs from "lumping" defendants together without specifying each defendant's role in the alleged fraud— e.g., by concluding, without any factual support, that every defendant "was and is an agent of each of the remaining [d]efendants"—plaintiffs may specifically allege the same conduct against multiple defendants. *See In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 911 (C.D. Cal. 2010) ("This is not to say that Plaintiffs may not make the *same* allegations against *all* Defendants . . . [if Plaintiffs] do so, [it] must be made by conscious choice and with specific purpose.").

Here, Plaintiff does not rely on any conclusory assumption of inter-related agency. Rather, he alleges the same conduct against all three Defendants "by conscious choice and with specific purpose"—because Defendants jointly devised and disseminated the false and misleading representations at issue by publishing those same representations on the Internet and supplying them to retailers. *See Id.* (*See also* FAC ¶ 1 n.1 ("Plaintiff alleges the same facts against [all three Defendants] unless otherwise specified . . . jointly and acting in concert").) What's more, Plaintiff supplies background facts underlying—and supporting—Defendants' joint venture: soon after it was acquired by Pegatron Corporation (which operates in the United States through Pegatron USA),

1    ASRock entered into a "global partnership" with Fatal1ty specifically to develop and market the

2    ASRock Fatal1ty branded motherboards, (*id.* ¶¶ 13, 16), released joint press releases about the

3    motherboards (*id.* ¶ 16), and "work[ed] closely" with Fatal1ty to develop and brand these products,

4    (*id.* ¶¶ 16, 18). In the end, the FAC explains that "all three Defendants" developed and distributed

5    *all* marketing and advertising for the motherboards—including those appearing on the

6    motherboards' packaging, on the "ASRock Fatal1ty motherboard subdomains of

7    www.asrock.com," and on online retailers' websites, like NewEgg.com (i.e., where Plaintiff

8    purchased his motherboard after viewing Defendants' representations).[7] (*Id.* ¶¶ 17–18, 49–51.)

9        Of course, it may be that one or more of the Defendants played a greater or lesser role in

10    aspects of the fraud. Perhaps Fatal1ty designed the motherboards' product packaging in line with its

11    established branding, subject to ASRock's and Pegatron's approval. Or perhaps Pegatron applied

12    the gold coating to the motherboards' Gold Finger PCIe slots, and alone decided to fabricate the

13    resulting purported performance increase. To the extent such details exist, however, Defendants

14    alone know them and Rule 9(b) does not require Plaintiff to guess at such facts through his

15    pleadings. *See Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.*, 965 F. Supp. 2d 1141, 1151

16    (E.D. Cal. 2013) (Rule 9(b)'s specificity requirement may be relaxed as to matters within the

17    opposite party's exclusive knowledge). Indeed, under Defendants' reasoning, it would be virtually

18    impossible to pursue fraud claims on facts involving more than one party engaging in a common

19    fraudulent scheme. Fortunately, such arguments are routinely rejected. *See, e.g.*, *Fields v. Wise*

20    *Media, LLC*, No. C 12-05160 WHA, 2013 WL 3187414, at *4 (N.D. Cal. June 21, 2013) (where

21    relevant facts are in defendant's possession, "[p]laintiffs should not be punished because multiple

---

22

23    [7]    Defendants' Motion feigns concern that two of the webpages where the subject
advertisements appear (i.e., at subdomains of www.asrock.com and retailer NewEgg.com, (*see* FAC

24    at ¶ 18; Exhibits A–D)) aren't "owned and operated" by Defendants. (Mot. at 6.) To the extent this
argument can even be considered, (*see* Opp. to Defendants' Request for Judicial Notice), it's a

25    complete red herring, because the FAC alleges that *Defendants* wholly controlled and provided the
product marketing and advertisements appearing on those, and other, websites. (FAC ¶ 18.) Stated

26    differently, what party actually "owns and operates" a particular website has no bearing on whether
the advertising appearing on those websites—*created and supplied by Defendants*—is deceptive

27    and whether the advertisers may be held liable. *See Ally Bank v. Castle*, No. 11-CV-896 YGR, 2012
WL 3627631, at *7 (N.D. Cal. Aug. 20, 2012) ("[Defendants] cannot escape liability for fraud . . .

28    where it is intended or reasonably foreseeable that it will be repeated and will be acted upon by the
plaintiff[.]"); *accord* Restatement (Second) of Torts § 533 (1977).

---

actors plausibly engaged in the exact same behavior as part of [a] broader alleged scheme"); *Susilo v. Wells Fargo Bank, N.A.*, 796 F. Supp. 2d 1177, 1191 (C.D. Cal. 2011) (denying motion to dismiss though plaintiff failed to allege which of defendant's agents made the false representations, when the "facts lie more in the knowledge of the opposite party.") (quotation omitted).

Accordingly, the FAC details the specific misrepresentations constituting Defendants' fraudulent conduct and readily satisfies the rigors of Rule 9(b).

**B.**    **California's Consumer Protection Statutes Should be Applied Extraterritorially Because Defendants' Fraudulent Conduct Emanated From California.**

Next, Defendants argue that Plaintiff's UCL, CLRA, and FAL claims should be dismissed under Rule 12(b)(6) because the FAC does not allege facts sufficient to justify the extraterritorial application of California law to Plaintiff, a New Hampshire resident. (Mot. at 7–9). This attack also falters, and, once again, glosses over the allegations of the FAC and misconstrues applicable law.

Under California law, the UCL, FAL, and CLRA apply to out-of-state residents when the challenged conduct is sufficiently connected to the State such that extraterritorial application of California law is warranted. *See Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598–99 (C.D. Cal. 2008) ("[A] California court may properly apply California laws to non-California members of a nationwide class where the defendant is a California corporation and some or all of the challenged conduct emanates from California."). Defendants' own authority confirms that the following factors govern this analysis: (1) where the defendant does business, (2) whether the defendant's principal offices are located in California, (3) where class members are located, and (4) the location from which advertising and promotional literature decisions were made. *Toyota,* 785 F. Supp. 2d at 917.

Each of the *Toyota* factors weighs in Plaintiff's favor. Under the first two factors, Plaintiff alleges that ASRock and Pegatron USA are incorporated under California law and have their principal place of business there (FAC ¶¶ 6–7), that ASRock's Sales and Marketing Department operates exclusively out of ASRock's California location (*id*. ¶ 7), and that all three Defendants conduct business throughout California (*id*. ¶¶ 6–8). For the third factor, a substantial number of Class members are certain to reside in California, since the Class potentially numbers in the

thousands and Defendants distribute their products nationally, including in California.[8] (*Id*. ¶¶ 6–8, 57.) And above all others, the fourth factor strongly favors the application of California law. This case is entirely about Defendants' fraudulent marketing of their motherboards, and the FAC specifically alleges that *all* such marketing emanated from California. These allegations include: that ASRock's Sales and Marketing Department operates exclusively out of California (*Id*. ¶ 7), that Pegatron USA's offices (which carry on all of Pegatron Corporation's U.S. operations) are located in California (*Id*. ¶ 6), and that Fatal1ty's marketing and branding efforts, including its partnership with ASRock, were promoted by non-party Auravision, Inc. in California. (*Id*. ¶¶ 15–16). Indeed, even Auravision's press release announcing the partnership between Fatal1ty and ASRock was made from California. (*Id*. ¶ 16.) Accordingly, the FAC alleges specific facts supporting that "*[a]ll* marketing and advertisements for the ASRock Fatal1ty motherboards . . . were developed by Defendants and emanated from California, either from ASRock's Sales and Marketing Department, Pegatron USA's offices, or from Auravision at Defendants' direction." (*Id*. ¶ 18 (emphasis added).)

Defendants have no answer to these allegations. Instead, they return to their (ineffective) Rule 9 arguments and protest that the FAC is not specific enough about which Defendant, or which Defendant's California office, was responsible for the at-issue marketing. (Mot. at 7-9.) But in the context of Defendants' *Rule 12* challenge to the extraterritorial application of California law, it makes no difference that Plaintiff does not specify the exact California office from where each marketing decision emanated—because *every* such decision emanated from California (i.e., from "ASRock's Sales and Marketing Department, Pegatron USA's offices, or from Auravision at Defendants' direction"—*all* of which are located in California). (FAC ¶ 18.) And while Defendants gripe that these allegations were made "rather . . . conclusorily," they forget that Paragraph 18 of the FAC was preceded by many others that show that all of Defendants' advertising decisions came from California. (*See id*. ¶¶ 6–8, 12–17.) The centrality of Defendants' marketing efforts—in addition to the other *Toyota* factors—more than justifies the application of California law.

Given the above, it's no surprise that Defendants' cited cases also fail to support their

---

[8]    This is especially true as California is—by a large margin—the most populous U.S. state. (*See* 2013 Census Data, http://www.census.gov/popclock/) (last visited July 28, 2014).

1   position. In *Gross*, for instance, the Court declined to apply the UCL to non-California residents

2   because the plaintiff "failed to allege the state in which [the] fraudulent conduct occurred." *Gross v.*

3   *Symantec Corp.*, No. 12-cv-00154 CRB, 2012 WL 3116158, at *8 (N.D. Cal. July 31, 2012)

4   (Breyer, J.) ("[B]ecause the fraudulent scheme materialized during the marketing and sale of

5   [defendant's products,] Plaintiff *should allege that [defendant's] sales and marketing departments*

6   *operate out of its California offices.*") (emphasis added). Here, in contrast, Plaintiff specifically

7   alleges that "[a]ll marketing and advertisements for the ASRock Fatal1ty motherboards"—the very

8   conduct at issue in this case—occurred in California at one or more of Defendants' California

9   offices and that ASRock's Sales and Marketing department operates out of California, (FAC ¶¶ 7,

10  18), providing the exact allegations this Court found lacking in *Gross*.

11          *Toyota* is distinguishable for similar reasons. There, the Court indicated that the plaintiffs

12  "alleged only that '[defendants'] decision to . . . engage in deceptive marketing was made, in part,

13  in California,'" did "not set forth factual allegations showing that [Toyota's] activities in California

14  [were] connected with the advertising" that the plaintiff complained of, and did not allege "with

15  sufficient detail that [California was] the point of dissemination [of the] advertising and

16  promotional literature" the plaintiffs relied on. *Toyota*, 785 F. Supp. 2d at 916, 917. Here, in

17  contrast, the FAC sets forth detailed factual allegations that *all* advertising for the ASRock Fatal1ty

18  motherboards—including those Plaintiff relied on—came from California. (FAC ¶¶ 6–7, 16–18.)

19          Because this case challenges Defendants' marketing efforts, all of which emanated

20  exclusively from California, the extraterritorial application of California law is warranted.

21          **C.     Plaintiff Properly Alleges Claims for False and Deceptive Advertising.**

22          Defendants also contend that Plaintiff fails to state a claim under the UCL, CLRA, and FAL.

23  Defendants raise two main attacks—first, that Plaintiff has not and cannot prove Defendants'

24  advertisements are false and, second, that Plaintiff's false advertising claims are based on a lack of

25  substantiation theory, which cannot be pursued by private litigants. (Mot. at 9–13.) These

26  arguments, like the others, are unavailing. And even if Plaintiff did assert a lack of substantiation

27  claim, it would still be actionable because Defendants—by claiming that their representations are

28  "proven by experiments"—put the experimental proof of their claims at issue.

1

### 1.      At the pleading stage, Plaintiff need not prove that Defendants' misrepresentations are false—only that a reasonable consumer would likely be deceived by them, which he has sufficiently demonstrated.

Defendants say that because Plaintiff has not shown (through his pleadings) and cannot show (given Defendants' own interpretation of their own advertising) that the subject advertisements are false, he fails to allege deception at all. (Mot. at vi, *see also id.* at 3, 6–7, and 11.) This entire line of attack—i.e., asking that Plaintiff *prove* the falsity of Defendants' advertisements at the pleading stage—misses the mark.

Foremost, to state a false advertising claim under the UCL, FAL, or CLRA, a plaintiff need only show that a reasonable consumer would be *deceived by* the subject advertisements—not that they are objectively false. *Williams*, 552 F.3d at 938; *see also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 950–51 (2002) (citation omitted) (noting that California law prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public."). What's more, the question of whether advertisements are deceptive is left to the trier of fact, and is "not appropriate for resolution on the pleadings." *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1131 (N.D. Cal. 2013). Thus, Plaintiff's claims survive even if he only alleges why he and others like him were likely to be misled by Defendants' advertising—which he does, in addition to showing their intrinsic falsity. (*see* Section I.A *supra*; FAC ¶¶ 20–47). *Williams*, 552 F.3d at 938; *Toyota*, 754 F. Supp. 2d at 1175 (allegations that vehicles were safe when Plaintiffs allege they were not was "sufficient to show that members of the public are 'likely to be deceived'"); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1362 (2003) (even where defendants presented "possible, if technical, interpretations of the statements," the court "cannot say that there is no triable issue on whether they were untrue or misleading"); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1115 (S.D. Cal. 2011) (false advertising claims should be dismissed only in "rare situations" where it is impossible to prove that a reasonable consumer would be deceived by the statements); *Morgan v. A T & T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1257 (2009) ("Unless we can say as a matter of law that contrary to the complaint's allegations, members of the public were *not* likely to be deceived or mislead . . . we must hold that plaintiffs stated a cause of action"). As such, it makes no

difference that Defendants offer interpretations to *dispute* Plaintiff's allegations of falsity, (Mot. at 9–13)—*especially* given that the FAC's allegations are taken as true. *Schlegel*, 720 F.3d at 1207.

      And even if Defendants' interpretations carried any weight here (they do not), none can salvage Defendants' misleading—and outright false—advertising. For example, Defendants assert that Plaintiff misunderstands the claim that their motherboards "Boost[] Network Performance 5X" because he incorrectly assumes that the motherboards must be capable of running at five times the maximum speed, rather than some other, unspecified speed. (Mot. at 10.)[9] But that argument is far from conclusive. Defendants promised a flat "5X" increase, rather than a *relative* increase—unlike certain of their competitors that marketed their own motherboards featuring identical component parts. (*See* FAC ¶ 25 (competing ad promising "better . . . performance compared to standard solutions").) Thus, as the FAC details, Defendants' "Killer LAN feature cannot improve network speeds by [an unqualified] '5X,'" (FAC ¶¶ 20–25), making the marketing false and misleading.

      Similarly, Defendants say the FAC's interpretation of the promised "136%" reduction in latency falters because it presumes a reduction in "an absolute number of milliseconds, rather than by a percentage." (Mot. at 11.) But even if the Court could consider it, Defendants' math[10] is wrong, because a 150% *reduction* is different from a 150% *increase* (i.e., an increase from 40 milliseconds to 100 milliseconds is a 150% increase, but reducing 100 milliseconds to 40 milliseconds is a 60% reduction—and *not*, as Defendants seem to believe, a 150% reduction). And the fact that Defendants promise reduced latency of "*up to*" 136% doesn't change the fact that any claim of latency reduction exceeding 100% is flatly false—i.e., it is physically impossible to reduce latency "up to" anything greater than 100%. (*See* FAC ¶¶ 28–32.) Thus, promising a reduction in latency of "up to 136%" is likewise impossible, patently false, and squarely misleading.

      Next, Defendants criticize Plaintiff for assuming that the advertised "performance" of a

---

[9]    Defendants' claim that Qualcomm's website contradicts the FAC is incorrect. (Mot. at 10, n.8.) As the FAC notes, "[w]hile Qualcomm states that its Killer Wireless *Wi-Fi adapters* 'are up to five times faster than competing adapters,' nowhere does Qualcomm say that its *wired hardware alone* (i.e., the component used in and marketed for the ASRock Fatal1ty motherboards) is capable of such speeds." (FAC ¶ 24, n.11.) *See also* Pl's Opp. to Request for Judicial Notice, filed herewith.

[10]    *See Hawkeye-Sec. Ins. Co. v. Bunch*, 740 F. Supp. 2d 1072, 1084 n.7 (E.D. Mo. 2010) ("Never trust a lawyer doing math.").

1   PCIe *graphics card* slot would be related to its *graphical performance* (i.e., graphical speed or

2   fidelity), and suggest "it is not rational or plausible that any manufacturer would incur the cost to

3   add a layer of 15 [U] gold plating for absolutely no benefit." (Mot. at 11-12.) While it's telling that

4   even Defendants have to guess at what their "Triple Performance" promise means, (Mot. at 11),

5   Plaintiff suspects that the sought "benefit" of the thin layer of gold plating is either its now-

6   advertised anti-oxidation qualities, (*see* FAC ¶¶ 42–43), or—more likely—inducing more

7   consumers to buy. In any event, the FAC shows that Defendants' prior claim—i.e., promising a

8   triple performance increase—is also patently false and misleading. (FAC ¶¶ 35–41.)

9           Not only can Defendants not force a trial now—i.e., by demanding proof of Plaintiff's

10  claims of falsity—their own explanations are not even defenses to Plaintiff's allegations. The FAC

11  readily demonstrates the deceptive, and inherently false, nature of Defendants' marketing.

12                  2.      Plaintiff does not assert a lack of substantiation claim.

13          In keeping with their habit of misconstruing allegations to fit their arguments, Defendants

14  argue that Plaintiff's claims are "based on [a] lack of substantiation," which cannot be pursued by

15  private litigants. (*See* Mot. at 9.) That argument misstates Plaintiff's allegations—none of which are

16  based on a lack of substantiation, and all of which contend that Defendants' marketing

17  representations are both patently false and inherently misleading.

18          While California law does not typically recognize private consumer claims when they are

19  based on a lack of substantiation, *see Bronson v. Johnson & Johnson, Inc.*, No. C 12-04184 CRB,

20  2013 WL 5731817, at *3 (N.D. Cal. Oct. 22, 2013), consumer plaintiffs may bring claims for false

21  or misleading advertising. *See Fraker v. Bayer Corp.*, CVF08-1564 AWI GSA, 2009 WL 5865687

22  (E.D. Cal. Oct. 6, 2009). Where factual allegations "suggest that evidence exists to refute the truth

23  of Defendants' representations," rather than "merely suggest[ing] that there is a lack of evidence to

24  substantiate [the] representations," such claims may proceed. *Dorfman v. Nutramax Labs, Inc.*, No.

25  13-cv-0873-WQH-RBB, 2013 WL 5353043, at *11 (S.D. Cal. Sept. 23, 2013); *see also Eckler v.

26  Wal-Mart Stores, Inc.*, No. 12-cv-727-LAB-MDD, 2012 WL 5382218, at *3 (S.D. Cal. Nov. 1,

27  2012) (if a plaintiff allegedly debunks a defendant's representations, the plaintiff "isn't just saying

28  those benefits are unsubstantiated. She is saying they are positively false.").

Though Defendants try to reframe Plaintiff's claims as involving substantiation of their marketing representations (as opposed to a claim of outright false or misleading advertising), that framing twists the allegations of the FAC. Here, each of the challenged misrepresentations hinge on allegations that the representations are affirmatively *false*—not that they are unsubstantiated.[11] (*See* FAC ¶ 45 ("5x" network performance increase "cannot be true" and is "patently false"); *id.* ¶¶ 31–32, 46 (136% reduction in latency is "a technological impossibility" and would "defy the laws of physics" if it were true); *id.* ¶¶ 38–41, 47 (because Gold Finger slot cannot be both PCIe 3.0 compliant and provide "triple performance," that representation "has no basis in truth," and "no experiment could possibly yield the 'triple' performance that Defendants promise"); *id.* ¶ 45 (technical specifications cannot be "proven by experiments" because "it's not possible that *any* actual experimentation could substantiate Defendants' claims . . ."). These allegations alone defeat Defendants' attack. *See In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012) ("the Court cannot conclude that Plaintiffs are merely alleging a lack of substantiation [where] the Complaint clearly alleges that the challenged representations are false."). Further, and like the "countless other courts" that have addressed the lack-of-substantiation question have found, here, "the crux of the disagreement . . . focuses on the strength of the evidence cited in the [complaint]," which cannot be resolved at the pleading stage. *Vasic v. Patent Health, LLC*, No. 13-cv-849 AJB MDD, 2014 WL 940323, at *7 (S.D. Cal. Mar. 10, 2014).

Given the above, Defendants' legal authority on this point is wholly inapposite, as each case centers on allegations of inconclusive scientific evidence, rather than the kind of contradictory evidence in the FAC. *See, e.g.*, *Scheuerman v. Nestle Healthcare Nutrition, Inc.*, 10-cv-3684-FSH PS, 2012 WL 2916827, at *7 (D.N.J. July 16, 2012) (Plaintiffs alleged that "Defendants made bold claims in advertisements without any reasonable basis for doing so and without substantiating them [and that Defendant] did not possess the requisite substantiation for the[] purported health claims");

---

[11]     Defendants seize on the fact that the word "substantiate" appears in the FAC as proof that Plaintiff pursues a lack of substantiation claim. (Mot. at 12.) But that allegation only reinforces Plaintiff's overall view that Defendants' marketing is inherently false—i.e., that it is "*not possible that any* experimentation could substantiate Defendants' claims." (FAC ¶ 45 (emphasis added).)

*Bronson*, 2013 WL 5731817 (where plaintiff provided no contradictory evidence that vitamins at issue did not support weight loss as claimed, allegations were lack of substantiation claims).

As Plaintiff's claims challenge the inherent falsity and misleading nature of Defendants' marketing—rather than alleging a lack of substantiation—Defendants' attack fails.

        3.      Defendants' lack of substantiation arguments fail because Defendants put the experimental evidence for their representations at issue.

Finally, it must be noted that even assuming, *arguendo*, that Plaintiff's claims are based upon a lack of substantiation (they are not), they would still survive because Defendants' put their experimental proof at issue. That is, by touting their products' technical specifications as "proven by experiments," Defendants have opened the door for Plaintiff to challenge their veracity.

Where a claim would otherwise be barred as based on a lack of substantiation, a consumer plaintiff may allege lack of substantiation where a defendant "puts the clinical proof for its product at issue." *McCrary v. Elations Co., LLC*, No. 13-cv-0242 JGB OPX, 2013 WL 6403073, at *9 (C.D. Cal. July 12, 2013); *Hughes v. Ester C Co.*, No. 12-cv-0041 JFB ETB, 2013 WL 1080533, at *4 (E.D.N.Y.) (applying California law and holding that where defendants "expressly stated that there is clinical research supporting its products," allegation that there was no such evidence was relevant and actionable); *Cabral v. Supple, LLC*, No. 5:12–cv–0085 MWF (OPx), Dkt. 29 at 4 (C.D. Cal. July 3, 2012) ("The Court views as significant the allegations that [Defendant's] advertising includes clinical claims."). Here, Defendants represent that their motherboards' technical specifications are "proven by experiments." (FAC ¶ 44; Dkt. 34–1.) In the FAC, Plaintiff details the reasons why this representation cannot be true. (*Id.* ¶¶ 44–48.) Thus, because Defendants' advertising expressly states that it is supported by clinical proof, Plaintiff "plausibly alleges falsity when he contends that there is an absence of such proof." *McCrary*, 2013 WL 6403073, at *9.

All told, Plaintiff's claims challenging Defendants' false and deceptive advertising must be taken at face value, must have all inferences drawn in Plaintiff's favor, and readily survive Defendants' Motion. Defendants' attempt to recast (and defeat) the FAC fails.

**D.    Plaintiff Sufficiently Pleads a Breach of Express Warranties Claim.**

In response to Plaintiff's breach of express warranty claim, Defendants rehash the same

arguments made in Sections II.B and II.C above, arguing that California's express warranty laws do not apply extraterritorially and cannot be based on "lack of substantiation" allegations. (Mot. at 13.) These arguments fail again, as courts commonly apply California's express warranty law extraterritorially where, as here, a plaintiff alleges a sufficient connection between the conduct alleged and California. *See Fulford v. Logitech, Inc.*, No. 08-cv-2041 MMC, 2008 WL 4914416, at *3 (N.D. Cal. Nov. 14, 2008) (where UCL and FAL claims were not subject to dismissal because plaintiff was a non-California resident, common law claims were not dismissed on the same basis).

Moreover, Plaintiff adequately states a claim for breach of express warranties because he specifies the exact terms of the warranty, a reasonable reliance thereon, and a breach that proximately caused his injury. *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1140 (N.D. Cal. 2010). First, in touting the technical specifications of their motherboards, Defendants overtly warranted that they would conform to those specifications (i.e., would be capable of the speeds and performance that was promised). (FAC ¶¶ 116–119.) *See Edmunson v. Procter & Gamble Co.*, No. 10-cv-2256-NLS, 2011 WL 1897625, at *6 (S.D. Cal. May 17, 2011) (product advertisements, brochures, or packaging can create an express warranty). Second, Plaintiff describes with specificity the exact terms of the warranties he viewed. (FAC ¶¶ 50–51.) Third, Plaintiff sufficiently pleads that Defendants breached these warranties—by alleging that the motherboard "was not capable of performing as advertised," and that he would not have purchased the motherboard (or would have bought it at a lower price) had he known the truth. (*Id.* ¶¶ 53, 116–124.)

In the end, Defendants' breach of their express warranties is straightforward: Defendants set forth the terms of their warranty by expressly representing on their and other websites, their product packaging, and through online retailers such as NewEgg.com that their motherboards would be capable of certain performance attributes. Because Defendants never delivered the performance improvements they promised, they breached those warranties. No elaborate mathematical equations or fine-print disclaimers can allow Defendants to credibly claim otherwise.

### E.   Plaintiff Has Properly Pleaded a Claim for Unjust Enrichment.

Finally, Defendants argue that Plaintiff's claim for unjust enrichment cannot stand because, supposedly (1) Plaintiff's fraud claims fail and there is no stand-alone cause of action for unjust

1   enrichment, and (2) Plaintiff has not alleged that Defendants knowingly received a benefit directly

2   from Plaintiff and other consumers who were duped into purchasing the motherboards. (Mot. at 14.)

3   This, like Defendants' other arguments, is incorrect.

4          First, as discussed in Section II.A *supra*, Plaintiff sufficiently pleads fraud pursuant to Rule

5   9(b) and Defendants themselves admit that an unjust enrichment claim can be based on an

6   accompanying claim of fraud. (Mot. at 14.) Second, Plaintiff overtly pleads that he conferred a

7   benefit on Defendants by purchasing their product under false pretenses. (*See* FAC ¶ 126.) For their

8   part, Defendants disclaim liability because they say Plaintiff did not pay them directly, (Mot. at

9   15)—a claim that stands in stark contrast to the FAC's allegation that "Defendants collected money

10  from [Plaintiff and the Class] for the purchase of the ASRock Fatal1ty motherboards. . ." (FAC ¶

11  126). And even if the Court were free to ignore parts of the FAC, as Defendants ask, such an

12  argument is specious at best and disingenuous at worst, and should be rejected in any event because

13  it has no basis in the law. *Cnty of San Bernardino v. Walsh*, 158 Cal. App. 4th 553, 542 (2007)

14  (unjust enrichment does not require that "money be paid directly to the recipient by the party

15  seeking restitution."); *see also Wolk v. Green*, 516 F. Supp. 2d 1121, 1133 (N.D. Cal. 2007) (in the

16  unjust enrichment context, "benefit means any type of advantage."). Even if, as Defendants argue,

17  the unjust enrichment claim is viewed as a quasi-contract claim, a direct payment to Defendants is

18  still not required. *Process Specialties, Inc. v. Sematech, Inc.*, No. 00-cv-414 FCD PAN, 2001 WL

19  36105562, at *20 (E.D. Cal. Nov. 8, 2001) (privity of parties is not required for unjust enrichment

20  under California law). Rather, "[t]he emphasis is on the wrongdoer's enrichment, not the victim's

21  loss." *Cnty of San Bernardino*, 158 Cal. App. 4th at 542. Plaintiff's claim for unjust enrichment

22  should survive as well.

23  **III.    CONCLUSION**

24         For the foregoing reasons, Defendants' Motion should be denied in its entirety. If, however,

25  the Court dismisses any portion of the FAC, Plaintiff respectfully requests leave to amend.[12]

26  _____

27  [12]    *See* Fed. R. Civ. P. 15(a)(2) (leave to amend should be "freely given when justice so requires"); *Eminence Capital, LLC. V. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003)

28  ("Dismissal with prejudice and without leave is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.").

Respectfully submitted,

Dated:  July 31, 2014

**JOSHUA SMITH**, individually and on behalf of all others similarly situated,

By: /s/ Benjamin S. Thomassen
          One of Plaintiff's Attorneys

Mark Eisen (SBN - 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Jay Edelson (Admitted *Pro Hac Vice*)
jedelson@edelson.com
Rafey S. Balabanian (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
Benjamin S. Thomassen (Admitted *Pro Hac Vice*)
bthomassen@edelson.com
Amir Missaghi (Admitted *Pro Hac Vice*)
amissaghi@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorneys for Plaintiff and the Putative Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Benjamin S. Thomassen, an attorney, hereby certify that on July 31, 2014, I served the above and foregoing ***Plaintiff's Opposition to Defendants' Motion To Dismiss First Amended Complaint*** by causing a true and accurate copy of such paper to be filed and served upon all counsel of record via the Court's CM/ECF electronic filing system.

/s/ Benjamin S. Thomassen      